IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FATIMA JEWETT,<br><br>Plaintiff,<br><br>v.<br><br>J.B. HUNT TRANSPORT SERVICES, INC.,<br><br>Defendant. | CIVIL ACTION<br>NO. 26-1581 |

**OPINION**

**Slomsky, J.** **September 30, 2026**

## I. INTRODUCTION

Fatima Jewett ("Plaintiff") brings this suit against her former employer J.B. Hunt Transport Services, Inc. ("Defendant") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Rights Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). (See Doc. No. 5.) In the Amended Complaint, Plaintiff claims, inter alia, that Defendant discriminated against her based on her sex and retaliated against her by terminating her after she filed an administrative charge with the Equal Employment Opportunity Commission (EEOC) for that discrimination. (See id.)

The only issue before the Court now concerns Count II of the Amended Complaint: the Retaliation Count. On June 4, 2026, Defendant filed a Partial Motion to Dismiss (Doc. No. 8), seeking dismissal of Counts II, V, and VI of Plaintiff's Amended Complaint. (See id.) On July 17, 2026, Plaintiff filed a Response in Opposition (Doc. No. 13). In the Response, Plaintiff withdrew Counts V and VI from this litigation, leaving only Count II, the Retaliation Count, remaining under Defendant's Partial Motion to Dismiss. (See id. at 1.) On July 23, 2026, Defendant filed a Reply (Doc. No. 14). The Motion is now ripe for disposition.

## II. BACKGROUND

The following facts are taken from the Amended Complaint and must be accepted as true for the purposes of the Motion to Dismiss. Plaintiff was a truck driver employed by Defendant from August 2023 to September 2025. (Doc. No. 5 ¶¶ 11–12.) Plaintiff had an "excellent" performance history and was "qualified for the position she held." (Id. ¶¶ 13–14.)

During Plaintiff's employment, Defendant engaged in a pattern of "reassigning Plaintiff from long-haul, higher-paying routes to shorter, lower-paying routes." (Id. ¶ 16.) On multiple occasions, Defendant cancelled or changed Plaintiff's assigned routes "in favor of male drivers." (Id.) This conduct "reduc[ed] [Plaintiff's] earnings and career advancement opportunities." (Id.) And despite Plaintiff repeatedly complaining to Defendant about this pattern of behavior, Defendant "refused to remediate the discriminatory conduct." (Id. ¶ 17.) On one occasion where Plaintiff complained to her manager Orlando McLean ("Mr. McLean") about her reassignments, Mr. McLean "admitted Defendant's discriminatory motive" by asking Plaintiff, "Did you ever stop to think it's because you're a single mom?" (Id. ¶ 18.)

On February 19, 2025, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) (the "EEOC Charge").[1] (Doc. No. 8 Ex. A.) The EEOC Charge contains allegations of sex discrimination and violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Rights Act ("PHRA"), the Philadelphia Fair Practices Ordinance

---

[1] While the Amended Complaint states Plaintiff "timely" filed a Charge with the EEOC, it does not state when the Charge was filed or attach the Charge as an exhibit. (See Doc. No. 5.) Defendant has attached a copy of the Charge to its Motion to Dismiss. (See Doc. No. 8 Ex. A.) In ruling on a motion to dismiss, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Therefore, this Court may consider the EEOC Charge when ruling on Defendant's Motion to Dismiss. See, e.g., Dixon v. Phila. Hous. Auth., 43 F. Supp. 2d 543, 545 (E.D. Pa. 1999) (considering EEOC charge in ruling on motion to dismiss).

("PFPO"), the Equal Pay Act, and the Pennsylvania Equal Pay Law. (Id. at 7–12.) In support of those claims, the EEOC Charge alleges that Defendant routinely re-assigned Plaintiff to shorter and lower-paying truck routes, that Defendant did not cure the conduct despite Plaintiff's repeated complaints, and that Mr. McLean implied Plaintiff's status as a single mother motivated these decisions.[2] (Id. at 8–9.) The EEOC Charge does not contain a claim for retaliation. (See id.)

On September 15, 2025, seven months after Plaintiff filed her EEOC Charge, Defendant informed Plaintiff her employment was terminated. (Doc. No. 5 ¶ 19.) Defendant attributed the termination to Plaintiff's "excessive callouts," but Plaintiff claims this reason is "pretexual" and "Defendant intentionally misapplied the policy and misrepresented Plaintiff's callouts to justify its termination of Plaintiff." (Id.)

On March 11, 2026, Plaintiff filed her initial Complaint in federal court. (Doc. No. 1.) On April 7, 2026, Plaintiff filed an Amended Complaint, which alleges the following claims in six (6) Counts:

- Count I: Sex Discrimination
- Count II: Retaliation
- Count III: Pennsylvania Human Relations Act (PHRA)
- Count IV: Philadelphia Fair Practices Ordinance (PFPO)
- Count V: Equal Pay Act
- Count VI: Pennsylvania Equal Pay Law

(Doc. No. 5.)

[2] In the Charge, Mr. McLean's name is spelled "Orlando McClane." (Doc. No. 8 Ex. A at 9.) For the purposes of consistency, this Opinion adopts the spelling used in the Amended Complaint.

On June 4, 2026, Defendant filed a Partial Motion to Dismiss Counts II, V, and VI of Plaintiff's Amended Complaint (Doc. No. 8). Regarding Count II, the Partial Motion to Dismiss asserts that Plaintiff has failed to exhaust administrative remedies for her retaliation claim. (Doc. No. 8 at 4–5.) On July 17, 2026, Plaintiff filed a Response in Opposition (Doc. No. 13). As noted earlier, in the Response, Plaintiff withdrew Counts V and VI from this litigation. (See id.) On July 23, 2026, Defendant filed a Reply (Doc. No. 14). Because Plaintiff has withdrawn Counts V and VI, only one issue remains before the Court today: whether Count II, the Retaliation Count, should be dismissed for failure to exhaust administrative remedies.

## III. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(6)

Courts in the Third Circuit examine failure to exhaust claims under Federal Rule of Civil Procedure 12(b)(6). Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997). The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). The "plausibility" determination is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**B. Exhaustion of Administrative Remedies**

Before bringing suit under Title VII, the PHRA, or the PFPO in federal court, a plaintiff must first exhaust administrative remedies by filing a timely Charge of Discrimination with the EEOC or the Pennsylvania Human Rights Commission (PHRC)[3] and receive notice of a right to sue.[4] Burgh v. Borough Council, 251 F.3d 465, 469–70 (3d Cir. 2001) (holding Title VII and PHRA claims must be exhausted before suit in federal court commences); Higgins v. MetLife Inc., 687 F. Supp. 3d 644, 652 (E.D. Pa. Aug. 17, 2023) (finding exhaustion with the EEOC and/or PHRC sufficient for PFPO claims). The exhaustion requirement serves two purposes. First, it encourages the settlement of disputes "through conference, conciliation, and persuasion, avoiding unnecessary action in court." Antol v. Perry, 82 F.3d 1291, 1296 (3d. Cir. 1996). Second, it puts

[3] Courts in this district are divided on whether a claimant must exhaust a PFPO claim by filing with the EEOC and/or PHRC. See Higgins v. MetLife Inc., 687 F. Supp. 3d 644, 651–52 (E.D. Pa. Aug. 17, 2023) (cataloguing divergence among district courts on this issue). A minority of courts in this district find that PFPO claims may only be exhausted by filing with the Philadelphia Commission on Human Relations, and that EEOC and PHRC filings do not suffice. See, e.g., Smith v. RB Distrib., Inc., 498 F. Supp. 3d 645, 665 (E.D. Pa. 2020); Lee v. Bay, LLC, No. 21-5088, 2023 WL 1971209, at *3 (E.D. Pa. Feb. 13, 2023). However, the "more established line of cases" concludes that PFPO claims may be exhausted by filing with the PHRC and/or EEOC. Higgins, 687 F. Supp. 3d at 651.

[4] Plaintiff's Right to Sue letter does not appear within her Amended Complaint (Doc. No. 5), Defendant's Motion to Dismiss (Doc. No. 8), or Plaintiff's Reply (Doc. No. 13). A plaintiff's failure to attach a Right to Sue letter does not mandate automatic dismissal of an action, so long as the plaintiff adequately pleads exhaustion of remedies. Sample v. Keystone Mercy Health Plan, No. 12–3188, 2012 WL 5401015, at *2 (E.D. Pa. Nov. 5, 2012) ("[T]here is no requirement that a right to sue letter be attached to a complaint . . . ." (quoting Butler v. BTC Foods Inc., No. 12-492, 2012 WL 5315034, at *4 (E.D. Pa. Oct. 19, 2012))); Wardlaw v. City of Phila., No. 09-3981, 2011 WL 1044936, at *3 (E.D. Pa. Mar. 21, 2011) (finding plaintiff "[was] not required to attach the EEOC/PHRC charges or the right-to-sue letters to [the complaint]," and instead plaintiff's "only burden [was] to sufficiently allege exhaustion"). For reasons discussed infra, Plaintiff has adequately alleged exhaustion of remedies.

the employer on "notice of the claims likely to be filed against it." Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 414 (3d Cir. 2010).

## IV. ANALYSIS

In the Partial Motion to Dismiss, Defendant seeks dismissal of Plaintiff's retaliation claim, appearing in Count II, for failure to exhaust administrative remedies. (See Doc. No. 8.) Defendant contends Plaintiff's EEOC Charge "contain[s] no reference to her termination," so she failed to exhaust administrative remedies with respect to her retaliation claim. (Doc. No. 8 at 5.) In response, Plaintiff submits she was terminated "in retaliation for opposing the very same mistreatment that was the basis of the Charge," so her retaliation claim is properly exhausted. (Doc. No. 13 at 3.)

When faced with a Complaint containing claims that were not presented to the EEOC, a district court must make a "two-pronged inquiry" into whether "the acts alleged in the subsequent . . . suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom." Simko v. U.S. Steel Corp., 992 F.3d 198, 207 (3d Cir. 2021) (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). This analysis is "highly fact specific," and requires the court to "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis before determining that a second complaint need not have been filed." Id. at 207 (quoting Robinson, 107 F.3d at 1024).

Turning to prong one of the exhaustion inquiry, Plaintiff does not argue that her retaliation claim falls within the scope of her prior EEOC Charge. (See Doc. No. 13 at 3.) In fact, Plaintiff's retaliation claim could not have appeared within her EEOC Charge, as her termination did not occur until seven months after she filed it. (Doc. No. 5 at 3.) Instead, the parties dispute prong two of the exhaustion analysis: whether Plaintiff's retaliation claim falls within the reasonable

scope of an investigation arising from Plaintiff's EEOC Charge. (Doc. No. 8 at 4–5; Doc. No. 13 at 3–4.)

To determine whether a claim would reasonably fall within the scope of the investigation of an EEOC charge, courts analyze "(1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." Simko, 992 F.3d at 209. This inquiry involves "look[ing] for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employer conduct at issue." Id. at 211. Because EEOC complaints are "often drafted by one who is not well versed in the art of legal description," the scope of the original charge should be "liberally construed." Hicks v. ABT Assocs., Inc., 572 F.2d 960, 965 (3d Cir. 1978).

Here, construing the EEOC Charge liberally and viewing the facts in the Amended Complaint in the light most favorable to Plaintiff, a reasonable investigation into the sex discrimination alleged in the EEOC Charge would have encompassed Plaintiff's retaliation claim. First, Plaintiff's retaliation claim arises from the same "set of facts" as her original charge because it involves the "same actors." Simko, 992 F.3d at 209. In her EEOC Charge, Plaintiff alleges she complained about the sex discrimination to Defendant on "several occasions." (Doc. No. 8 Ex. A at 9.) On one such occasion, when she complained to her manager Mr. McLean, he implied her status as a single mother motivated Defendant's decision to alter her truck-driving assignments. (Id.) Plaintiff does not allege that she transferred groups or changed supervisors between the filing of her EEOC Charge and eventual termination. (See Doc. No. 5.) Thus, viewing the Amended Complaint in the light most favorable to Plaintiff, her sex discrimination and termination involve the same department and supervisors. This factual nexus demonstrates a reasonable investigation into Plaintiff's sex discrimination claims would include retaliatory acts by the same actors seven

months later.[5] See, e.g., Tohidi v. City of Reading Police Dep't, No. 24-0591, 2024 WL 3015514, at *5 (E.D. Pa. June 13, 2024) (finding retaliation claim exhausted where discriminatory and retaliatory conduct involved same actors); Kelly v. Regency Mgmt. Servs., LLC, No. 24-2447, 2024 WL 5082326, at *3 (E.D. Pa. Dec. 11, 2024) (finding a reasonable investigation into a sex discrimination claim would have encompassed failure to promote claim because the investigation "would have revealed the goings-on in her department").

Second, the facts supporting Plaintiff's retaliation claim advance the same "theory of discrimination" as Plaintiff's original sex discrimination claim. Courts in this Circuit and other Circuits routinely find "that a claim alleging retaliation for filing an EEOC charge is reasonably related to the initial charge of discrimination." Bonsall v. Cnty of Del., No. 24-5866, 2026 WL 499908, at *9 (E.D. Pa. Feb. 23, 2026); see also Lantz v. Waynesboro Area Sch. Dist., No. 16-0224, 2016 WL 6039129, at *5 (M.D. Pa. Oct. 14, 2016); Duplan v. City of N.Y., 888 F.3d 612, 622 (2d Cir. 2018) ("In the paradigmatic case for which the 'reasonably related' doctrine was adopted, retaliation occurs while the EEOC charge is still pending before the agency. It is well established that the plaintiff may then sue in federal court on both the adverse actions that gave the impetus for the initial EEOC charge and the retaliation that occurred thereafter, even though no separate or amended EEOC charge encompassing subsequent retaliation was ever filed.").

---

[5] The status of the EEOC investigation in this case is unclear at this stage. Defendant has attached to its Motion to Dismiss (1) a Notice of Charge of Discrimination, (2) a Request for a Position Statement, (3) a screenshot of the EEOC portal, (4) the EEOC Charge, and (5) a Request for Information from the EEOC. (See Doc. No. 8 Ex. A.) As explained supra, the Court may consider these documents because they are integral to the Complaint. Without any indication of whether the investigation is still pending or closed, the Court cannot consider the investigation's status in ruling on the Motion to Dismiss. Instead, the Court focuses on the investigation it would reasonably expect to result from the EEOC Charge. See Waiters, 729 F.3d at 237. Construing the EEOC Charge "liberally" and viewing the facts in the light most favorable to Plaintiff, a reasonable investigation into Plaintiff's sex discrimination claims could last over seven months.

In her EEOC Charge, Plaintiff alleges Defendant systematically prevented her from driving higher-paying routes based on her sex, "reducing her earnings and career advancement opportunities." (Doc. No. 8 Ex. A at 2.) Likewise, in her Amended Complaint, Plaintiff states Defendant terminated her in retaliation for reporting the same mistreatment that formed the basis of her Charge. (Doc. No. 5 ¶ 19.) The EEOC, investigating Plaintiff's allegations and their impact on her "career advancement opportunities," would reasonably encounter the end of Plaintiff's career with the company seven months later. Therefore, the retaliation and sex discrimination claims advance the same "theory of discrimination."

Defendant relies on Simko v. United States Steel Corp., 992 F.3d 198, 207 (3d Cir. 2021), in support of its argument that Plaintiff failed to properly exhaust her retaliation claim. In Simko, the Third Circuit Court of Appeals found a plaintiff had not exhausted his retaliation claim because it was "too remote in time and substantively distinct" from the allegations in his original EEOC charge. 992 F.3d at 211. The plaintiff's EEOC charge alleged his employer discriminated against him based on his disability. Id. at 202. Seventeen months after filing that charge, the plaintiff notified the EEOC that he had been terminated. Id. at 212. Prior to that termination, the plaintiff had moved to a new group, where he worked under a different supervisor. Id. at 211. The court found a "reasonable investigation" into the plaintiff's original charge–which alleged disability discrimination–would not address his termination two years later involving "different supervisors in different departments." Id. Therefore, the plaintiff had not exhausted his retaliation claim. See id. at 210–213.

Simko is distinguishable from this case. First, the claimant in Simko was terminated seventeen months after he filed his initial EEOC charge. By contrast, Plaintiff was terminated seven months after filing her EEOC Charge, and, as she alleges, in retaliation for filing the EEOC

Charge. So viewing the Amended Complaint in the light most favorable to Plaintiff, a reasonable investigation into Plaintiff's sex discrimination claims would have included her termination seven months after the EEOC Charge was filed. Second, unlike in Simko, where the claimant's alleged termination was from a "different department" with "different supervisors," Plaintiff remained in the same department and under the same supervisor in the months between the filing of her Charge and termination. (Doc. No. 5 at 3; see also Doc. No. 13 at 4.) An investigation into the culture of the department and supervisors behind Plaintiff's sex discrimination claim would reveal adverse, retaliatory actions taken against Plaintiff by that same department.

Defendant also argues "[t]ermination is a discrete act requiring separate exhaustion." (Doc. No. 8 at 5.) Not so. Courts in this Circuit have declined to adopt a per se rule mandating the filing of a new charge when a plaintiff is terminated after filing an initial charge. See, e.g., Waiters, 729 F.2d at 238 (allowing plaintiff to proceed with retaliation claim despite failure to file EEOC charge alleging retaliation); Green v. Postmaster Gen., 437 F. App'x 174, 178 (3d Cir. 2011) ("A complainant need not file a new [administrative complaint] as to new acts that occur during the pendency of the case which are fairly within the scope of an [administrative complaint] or the investigation growing out of that complaint." (quoting Waiters, 729 F.3d at 237)). Instead, courts examine the facts in the charge to determine if the retaliation falls within the scope of the original EEOC charge or a reasonable investigation arising from that charge. See Waiters, 729 F.2d at 239. Here, Plaintiff's retaliation claim falls within the reasonable scope of an investigation of her EEOC Charge. Accordingly, Plaintiff has exhausted her retaliation claim.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint (Doc. No. 8) will be denied. An appropriate Order follows.